IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DRIPPING WET WATER, INC., et al. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| VS. | ) | Civil Action No: SA-07-CA-531-XR |
| | ) | |
| IDEX CORPORATION, et al. | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER

This case involves a dispute over the acquisition and use of certain chlorine dioxide technologies. Plaintiffs have pled patent-related federal law claims, along with state law claims for unjust enrichment, fraud and intentional concealment, and unfair competition. Defendants filed a motion to dismiss (Docket No. 13) asserting improper service, lack of personal jurisdiction, and the affirmative defense of res judicata. Plaintiffs responded, and Defendants filed a reply. For the reasons stated herein, Defendants' motion to dismiss is GRANTED.

## Factual Overview

Plaintiffs are Dripping Wet Water, Inc. (DWW) and Allison and Richard Sampson, the president and vice president of DWW, respectively. DWW manufactures and sales chlorine dioxide generators and related products. Chlorine dioxide is a biocide used in a variety of disinfection applications and is especially noted for its use with water treatment.

Defendants are IDEX Corporation (IDEX), Halox Technologies, Inc. (Halox), Pulsafeeder, Inc. (Pulsafeeder), and Felice DiMascio (DiMascio). The three companies are or were involved in manufacturing and distributing chlorine dioxide generators, and DiMascio was an employee for Halox during the time period at issue.

1

Plaintiffs allege that certain patents for chlorine dioxide technologies improperly list DiMascio as the only inventor, when both Allison and Richard Sampson made significant contributions to the inventions. As alleged co-inventors of these technologies, Plaintiffs assert an ownership interest in the patents.

Plaintiffs further allege claims of unjust enrichment, fraud and intentional concealment, and unfair competition. Specifically, Plaintiffs aver Defendants impermissibly copied their inventions from Plaintiffs' technology, gaining access to the technology by fraudulently leading Plaintiffs to think they were interested in forming genuine business partnerships. Plaintiffs also assert that Defendants continue to falsely advertise that they hold the exclusive rights to the challenged patents, causing foreseeable and substantial damages to Plaintiffs' business interests.

**Analysis**

Standard for Motion to Dismiss

In determining the merits of a 12(b)(6) motion to dismiss, the Court must accept "all well-pleaded facts as true and . . . view them in the light most favorable to the plaintiff."[1] Moreover, the Court "may not look beyond the pleadings" in ruling on the motion.[2] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[3] In other words, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint

---

[1] McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).

[2] *Id*.

[3] In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

are true (even if doubtful in fact)."[4]

Service of Process

In their motion to dismiss, Defendants allege Plaintiffs served them improperly by certified mail. In response, Plaintiffs re-served Defendants by personal service to eliminate a service dispute. According to Defendants in their reply, however, DiMascio was not personally served, but rather, received service via certified mail to his parents' address.[5]

FED. R. CIV. P. 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Tex. R. Civ. P. 103 states that process may be served by "any person authorized by law or by written order of the court who is not less than eighteen years of age." Tex. R. Civ. P. 106 builds on Rule 103 by providing that service may be made by "mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto."

The defect in service asserted by Defendants could easily be cured by the Court ordering, pursuant to Federal Rule 4(e)(1) and Texas Rules 103 and 106, that Plaintiffs' counsel may serve Defendant DiMascio by certified mail. The Court does not take this step, however, because it lacks personal jurisdiction over Defendants.

Status of Halox Technologies, Inc.

Before proceeding to personal jurisdiction, the Court considers Defendants' argument that Halox cannot be sued because it no longer exists. In support of their position, Defendants cite to

---

[4] Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007).

[5] *See* Docket No. 26 at 2, n. 2.

language in the Fifth Circuit case of *Cornish v. Texas Board of Criminal Justice Office of the Inspector General* that reads "a Texas defendant may only be sued if it has an actual or legal existence."[6]

*Cornish* involves a suit where one of the named defendants is the Texas Board of Criminal Justice Office of the Inspector General. As the court observes, "the Texas Government Code establishes the Texas Board of Criminal Justice, but it does not establish the Office of Inspector General as a separate entity."[7] As a result, no claim can stand against the Texas Board of Criminal Justice Office of the Inspector General because it has no "actual or legal existence."[8]

Here, though, the issue is not whether Plaintiffs can sue an office that never existed as a separate entity, but rather, whether they can sue a corporation that used to exist as a separate legal entity, but now is merged into a new corporation.

On July 28, 2006, Halox, along with Eastern Plastics, a corporation organized and incorporated under the laws of Connecticut, filed a certificate of merger with Delaware, Halox's state of incorporation, in which Halox was merged "with and into" Eastern Plastics.[9] According to Connecticut law,[10] "a successor," which in this case would be Eastern Plastics, "assumes its

---

[6] Docket No. 13 at 4-5 (citing to Cornish v. Texas Board of Criminal Justice Office of the Inspector General, 141 Fed. Appx. 298, 299 (5th Cir. 2005).

[7] *Cornish*, 141 Fed. Appx. at 299.

[8] *Id*.

[9] Docket No. 13 at Exhibit D.

[10] The other problem with Defendants' argument is that it relies on Texas law. Neither of the merged companies, however, were incorporated in Texas, so Texas law does not determine whether and how Halox remains liable for its alleged pre-merger actions.

predecessor's liabilities if . . . there was a merger or consolidation of the two firms."[11] Moreover, the "actions and conduct of a constituent corporation may be attributed to the surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities incurred by the constituent corporation."[12]

Therefore, to pursue their claims against Halox, Plaintiffs would need to amend their complaint to name Eastern Plastics, Inc. as a Defendant. While a necessary legal step, such amendment would not alter the facts presented in the present complaint or in Plaintiffs' response to Defendants' motion to dismiss for lack of personal jurisdiction. Accordingly, the Court will consider whether Plaintiffs have met their burden of showing that personal jurisdiction would have extended to Halox, and thus via the merger and Connecticut law, should now extend to Eastern Plastics, the successor corporation.[13]

Personal Jurisdiction - Overview

As an initial matter, "when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized

---

[11] Union Square Grill Hospitality Group v. Blue Smoke American Bar & Grill, 2007 WL 869024 at 2 (D. Conn. 2007).

[12] Betensky v. Opcon Associates, Inc., 46 Conn. Supp. 110, 116 (Conn. Super 1999).

[13] Plaintiffs have pled no facts that suggest that apart from Halox's alleged actions pre-merger, Eastern Plastics's contacts with Texas, if any, relate to the underlying causes of action. Thus, the Court is fully able to consider whether specific jurisdiction exists based on the pleadings, affidavits, and exhibits before it. As for general jurisdiction, while the Court finds that such jurisdiction would not have extended to Halox, it recognizes that there is no briefing on whether general jurisdiction exists over Eastern Plastics.

methods of discovery."[14] In so doing, the court must resolve relevant factual disputes in the

plaintiff's favor, and the plaintiff "need only plead a prima facie case for personal jurisdiction."[15]

In cases dealing substantively with patent law, courts apply the law of the Federal Circuit

in determining whether personal jurisdiction exists.[16] Under the law of the Federal Circuit, a

court may assert jurisdiction if: 1) service of process is proper under the state's long-arm statute,

and 2) due process is satisfied under the Fourteenth Amendment.[17]

In Texas the state long-arm statute provides a court with "personal jurisdiction over a

foreign defendant to the fullest extent allowed by the federal constitution."[18] Accordingly, "the

usual two-step analysis reduces to one step, and we consider whether exercising jurisdiction over

[the Defendants] is consistent with the Due Process Clause of the Fourteenth Amendment."[19]

As the Fifth Circuit has said, "the Due Process Clause of the Fourteenth Amendment

permits the exercise of personal jurisdiction over a nonresident defendant when 1) that defendant

has purposefully availed himself of the benefits and protections of the forum state by establishing

'minimum contacts' with the forum state; and 2) the exercise of jurisdiction over that defendant

does not offend 'traditional notions of fair play and substantial justice.'"[20] The court went on to

---

[14] Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).

[15] Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005).

[16] *See* Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

[17] *See* Hildebrand v. Steck Manufacturing Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002).

[18] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000).

[19] *Id*.

[20] Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir. 1999).

state that "minimum contacts . . . can be established through contacts that give rise to specific personal jurisdiction or those that give rise to general personal jurisdiction."[21]

General personal jurisdiction will "attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'"[22] As the holding in the Supreme Court case of *Helicopteros Nacionales de Colombia, S.A. v. Hall*[23] and its lower court progeny demonstrate, to qualify for general jurisdiction, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there."[24] Defendants' contacts with Texas do not rise to such a level, meaning that if there is personal jurisdiction, it must be specific personal jurisdiction.

In "deciding whether [specific] personal jurisdiction is consistent with the Due Process Clause," the Court considers "1) whether the defendant has minimum contacts with the forum state . . . [and] 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[25] If a plaintiff makes a prima facie showing of facts that meets these two requirements, then the "burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."[26]

---

[21] *Id*.

[22] *Alpine View*, 205 F.3d at 215.

[23] 466 US 408 (1984).

[24] 4 Fed. Prac. & Proc. Civ.3d § 1067.5.

[25] Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002).

[26] *Id*. at 378, 382.

Minimum Contacts - Overview

"A defendant establishes minimum contacts with a state if the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there."[27] The defendant must engage in some act whereby it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."[28]

Minimum Contacts - Halox Technologies

Halox Technologies, a Delaware corporation that had its principal place of business in Connecticut, merged into Eastern Plastics, a Connecticut corporation. During the period of October 9 through October 13, 2001, Plaintiffs exhibited their chloride dioxide generator products at a trade show in Dallas, Texas. As part of the exhibition, Plaintiffs distributed marketing literature explaining the advantages of their new ion exchange technology. Plaintiffs allege that "Defendants," without specifying which Defendants in particular, "attended the 2001 AWT [Association of Water Technologies] Expo and received Plaintiffs' literature which disclosed Plaintiffs' unique technology."[29] Plaintiffs go on to acknowledge, however, that Defendant Idex did not acquire the business assets that would become Halox until March 2002.[30]

---

[27] *Id*. at 379.

[28] *Id*.

[29] Docket No. 3 at 8.

[30] *Id*. at 8-9.

Because Plaintiffs do not allege that the unnamed "third party sellers" that sold the "Halox Electro-Chemical Technology" made contact with them during the 2001 trade show,[31] any contacts made by other Defendants at that Texas event cannot be attributed to Halox for purposes of establishing specific jurisdiction.

Plaintiffs next allege that at a trade show in Florida from September 18 through 21, 2002, "Defendants Idex, Pulsafeeder, and Halox" were in attendance.[32] During the course of this event, Paul Beldham, a man identified by Plaintiffs simply as "Defendants' representative," supposedly asked Plaintiff Richard Sampson "to provide a more detailed disclosure of Plaintiffs' unique technology and to demonstrate DWW's generator products to Defendants."[33] In response to this request, Plaintiffs contend they spent several hours discussing their new technologies with Marta Broge, Steve Ebersohl, and Paul Beldham, all of whom are described as "Defendants' representatives."[34]

Even assuming one of these Defendants was associated with Halox, the event in question took place in Florida. Plaintiffs do not allege they had further communications with any of the Defendants, including Halox, between the end of the Florida trade show on September 21st and the submission on September 30th of a patent application by DiMascio, who at the time was allegedly employed by Halox. Hence, when the so-styled 259 DiMascio patent application was filed, Defendant Halox had yet to establish any contacts with Texas related to the causes of

---

[31] *See Id.*

[32] *Id.* at 10.

[33] *Id.*

[34] *Id.*

action pled by Plaintiffs.

Plaintiffs do aver that Paul Beldham called them in November 2002 to further discuss business opportunities and to arrange for DiMascio to visit their San Antonio facilities. Furthermore, on December 18 and 19, 2002, DiMascio visited Plaintiffs in San Antonio, touring their offices and discussing more in-depth the technologies, business practices, and marketing strategies they employed. Because DiMascio was employed by Halox at this time, his visit to San Antonio for the exclusive purpose of meeting with Plaintiffs, investigating their technical processes and business operations, and exploring the potential for future business partnerships between Plaintiffs and his employer is sufficient to show that Halox purposefully directed its activities toward Texas in a manner that would, but for one missing requirement, meet the minimum contacts requirement.

The missing requirement is that for specific jurisdiction, Plaintiffs must show that their causes of action arise out of or result from Halox's contacts with Texas.[35] They cannot do this because Halox's contacts with Texas occurred **after** the time period in which a contact could have given rise to Plaintiffs' federal patent-related claims, and thus by extension, to Plaintiffs' connected state law claims. Plaintiffs have pled two federal law claims: one for addition of patent inventors under 35 U.S.C. § 256 and another for declaratory judgment of ownership interest in the DiMascio patents. Plaintiffs' remaining claims for unjust enrichment, fraud and intentional concealment, and unfair competition are state law causes of action that Plaintiffs' contend are "ancillary to the federal declaratory judgment count" and arise "from the same transactions and

---

[35] *Nuovo Pignone*, 310 F.3d at 381-2.

from a common nucleus of operative facts."[36]

Although Plaintiffs assert patent-related claims for patents filed over a period of time stretching from September 30, 2002 through August 11, 2006,[37] they focus almost exclusively on the first patent, known as the 259 DiMascio patent. They allege that the "259 DiMascio application copied significant portions of Plaintiffs' technology disclosed to Defendants and was filed without informing Plaintiffs."[38] As for the patents that followed, Plaintiffs merely assert that "Defendants have subsequently filed, or caused to be filed, other U.S. and foreign patent applications which claim priority and/or correspond to the 259 DiMascio application."[39]

Indeed, Plaintiffs make no factual assertions about their rights to the post 259 DiMascio patents other than implying that their rights in these patents stem from the patents' reliance on technology allegedly obtained impermissibly by Defendants **prior** to their filing of the 259 DiMascio patent. Therefore, if Plaintiffs have not met their personal jurisdiction burden with respect to the 259 DiMascio patent, they will not be able to meet such burden for the later-filed patents.

Stated simply, Defendants' Texas contacts after September 30, 2002 cannot give rise to Plaintiffs' causes of action for the later patents because there is no allegation that those patents are based on technologies other than the ones allegedly obtained improperly prior to the filing of the 259 DiMascio patent. Thus for all the patents and their related state law claims, the only

---

[36] Docket No. 3 at 17, 18, and 20.

[37] *Id*. at Exhibit 1.

[38] *Id*. at 11.

[39] *Id*.

relevant forum state contacts would be those that took place before September 30, 2002 when the

259 DiMascio patent application was filed. Because Plaintiffs have failed to establish that Halox

had any contacts with Texas prior to September 30, 2002, they cannot meet their specific

jurisdiction burden of showing that their patent-related causes of action arise out of or result from

Halox's contacts with Texas.

Minimum Contacts - DiMascio

Defendant DiMascio is domiciled in Connecticut. During the time period pertinent to this

suit, DiMascio was an employee of Halox, which had its principal office in Connecticut.

Plaintiffs make no allegations of DiMascio having relevant contacts with Texas until his visit to

San Antonio in December 2002. Because that date comes after September 2002, the filing date

for the 259 DiMascio patent, Plaintiffs fail, for the reasons stated above as to Halox, to show

how DiMascio's contacts with Texas give rise to their patent-related causes of action.

Minimum Contacts - IDEX

Defendant IDEX is a Delaware corporation with its principal place of business in Illinois.

According to Plaintiffs, it is a "holding company that owns numerous separately incorporated

businesses," including previously Halox.[40]

Unlike with Halox and DiMascio, Plaintiffs do allege that IDEX had contact with Texas

before September 30, 2002. That contact was limited, however, to presence at a 2001 trade show

in Dallas that was sponsored by the Association of Water Technologies. While there, IDEX

purportedly received free marketing literature from Plaintiffs that discussed Plaintiffs'

technology.

---

[40] *Id*. at 1.

IDEX disputes that any of its employees were present at the Dallas trade show. Craig Boyd, deputy general counsel and assistant secretary for IDEX, submitted an affidavit in which he attests that he is "unaware of any IDEX or Pulsafeeder employees attending the 2001 Association of Water Technologies trade show identified by Plaintiffs in their Amended Complaint."[41]

Even assuming IDEX employees were at the trade show, the remainder of IDEX's alleged contacts with Texas, all of which occurred after September 2002, could not, for the reasons articulated above, be reasonably viewed as giving rise to Plaintiffs' causes of action. Thus, for purposes of meeting the minimum contacts test, all Plaintiffs have to work with is IDEX's purported appearance at a trade show. Although this contact is relevant to the patent intervention and usage claims asserted by Plaintiffs, along with the related state law tort claims, one attendance at a trade show where its employees picked up free marketing materials at a vendor's exhibit is insufficient to show that IDEX "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[42]

Minimum Contacts - Pulsafeeder

Defendant Pulsafeeder is a Delaware corporation with its principal place of business in Illinois. Like IDEX, its only relevant contact with Texas for purposes of specific jurisdiction is its alleged presence at the 2001 Dallas trade show. For the reasons stated above with respect to IDEX, this contact is not enough to provide the Court with personal jurisdiction.

---

[41] Docket No. 13, Affidavit of Craig T. Boyd.

[42] *Nuovo Pignone*, 310 F.3d at 379.

13

Res Judicata

Because the Court does not have personal jurisdiction over the Defendants, it has no basis

on which to consider the res judicata affirmative defense asserted by Defendants.

## Conclusion

The Court lacks personal jurisdiction over Defendants for purposes of Plaintiffs' patent-

related federal and state law claims. Therefore, those claims are dismissed without prejudice, and

the Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 24th day of April, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE